# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 05-0806 (RMC)** |
| **NATIONAL INDIAN GAMING COMMISSION,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM OPINION

This is one of those rare Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, cases in which the government might have fully performed its duties to search and disclose requested non-exempt documents but fails to give the Court sufficient information to make that determination. As a result, the government's motion for summary judgment will be denied without prejudice.

## I. BACKGROUND

An organization called Citizens for Responsibility and Ethics in Washington ("CREW") submitted a March 21, 2005, FOIA request to the National Indian Gaming Commission ("NIGC"), asking for all documents and records that relate to any contact between NIGC and Jack Abramoff, Michael Scanlon, James Dobson, Ralph Reed, Scott Reed, Itlia Federici, Grover Norquist, David Safavian, Congressmen Bob Ney and Tom DeLay, House Speaker Denny Hastert, Senator Conrad Burns, staff members of the Congressmen and Senator, employees of the law firms of Greenberg Traurig LLP and Preston Gates Ellis LLP, Capital Campaign Strategies, Council of Republicans for Environmental Advocacy, National Center of Public Policy Research, and

Americans for Tax Reform.  The request also asked for records concerning the Agua Caliente Tribe,

Tigua Tribe, Saginaw Chippewa Tribe of Michigan, Mississippi Band of Choctaw Indians, Coushatta

Tribe of Louisiana, and the Jena Band of Choctaw Indians.  NIGC interpreted the request as seeking

documents showing a relationship between those tribes and the non-tribal individuals and entities

listed.[1]

NIGC is a federal agency tasked with oversight regulation of Indian gaming

operations under the Indian Gaming Regulatory Act of 1988 ("IGRA"), 26 U.S.C. § 2701 *et seq*.

Its chairman is appointed by the President.  NIGC has national headquarters in Washington, D.C.

and is divided into six regions, with regional offices in Portland, Oregon; Sacramento, California;

Phoenix, Arizona; St. Paul, Minnesota; Washington, D.C.; and Tulsa, Oklahoma.  The agency also

has satellite offices in Temecula, California; Las Vegas, Nevada; Jackson, Mississippi; Rapid City,

South Dakota; and Bellingham, Washington.  Auditors and investigators from NIGC are responsible

for ensuring that Indian gaming establishments are complying with the IGRA, NIGC regulations, and

tribal gaming ordinances.  NIGC works with the Federal Bureau of Investigations ("FBI") and other

federal agencies to investigate allegations of regulatory violations and of criminal activity in Indian

gaming establishments.  NIGC, the FBI, and other federal agencies[2] formed the Indian Gaming

Working Group ("IGWG") in 2003 to direct resources in a more coordinated fashion into Indian

gaming law enforcement matters.  Given this portfolio and the on-going investigation into former

---

[1]  CREW was advised of this interpretation of its request and was given the opportunity to appeal it but did not do so.

[2]  Other agencies include the Department of Interior Office of Inspector General, the Internal Revenue Service Tribal Government Section, the Department of Treasury Financial Crimes Enforcement Network, the Department of Justice, and the Bureau of Indian Affairs Office of Law Enforcement Services.

lobbyist Jack Abramoff's relationship to Indian tribes, CREW challenges the response to its FOIA request, which turned up only fourteen responsive documents.

NIGC acknowledged CREW's FOIA request on March 22, 2005, and advised that its substantive response would be delayed due to limited personnel resources. NIGC's FOIA office then sent "search taskers" to the NIGC's Office of General Counsel, the NIGC Commissioners, the NIGC Office of Congressional and Public Affairs, the NIGC Enforcement Division, the NIGC Contracts Division, and NIGC's regional and satellite offices. When the search responses came back, the NIGC FOIA Office sorted through them and identified fourteen responsive documents. It released in full a two-page letter and withheld its twelve-page attachment in its entirety under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), which protects inter- and intra-agency communications. The remaining documents, consisting of 262 pages, were withheld in their entirety under FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), which protects law enforcement records, on the basis that release reasonably could be expected to interfere with an ongoing investigation and enforcement proceeding. On May 19, 2005, after a phone conversation between CREW and the NIGC FOIA Officer, NIGC released an additional ninety-six pages, eighty-one in full and fifteen in part.

The argument presented by CREW in opposition to NIGC's motion for summary judgment centers around its claim that NIGC has not performed an adequate search. NIGC initially described its search through an affidavit that merely stated: "The FOIA Office sent search taskers to the Office of General Counsel, the Commissioners, the Office of Congressional and Public Affairs, the Enforcement Division, the Contracts Division, and the regional and satellite offices." Def.'s Mot. Summ. J., Decl. of Regina Ann McCoy ("1st McCoy Decl.") ¶ 17. Faced with CREW's opposition, NIGC further described its search in a supplemental affidavit, in which it stated:

Each search request had the [CREW] request letter appended to it. NIGC employees are asked to search all files they consider likely to contain relevant material when given a FOIA search request. Therefore, the files of the NIGC Commissioners, Office of General Counsel, Contracts Division, Enforcement Division, Field Officers, and Office of Congressional and Public Affairs were searched using the names provided in the [CREW] letter. Employees of the Divisions and Offices that participated in the search were asked to search both their electronic and paper files. The Commissioners' files were searched by their executive secretary. The search taskers specifically provide: 'While conducting your records search, please be certain to include a review of any electronic records (e.g. 'email') that may be responsive to this request." This search included all offices and files reasonably calculated to uncover all relevant documents and responsive materials; thus, all files likely to contain responsive materials were searched.

. . .

NIGC employees submitted to the FOIA office electronic records, faxes, and emails as well as paper documents in response to the search request.

Def.'s Reply, Suppl. Decl. of Regina Ann McCoy ("2nd McCoy Decl.") ¶¶ 6-7.

## II. ANALYSIS

The court in *Oglesby v. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990), established

the clear requirements that an agency must satisfy to conduct an adequate FOIA search.

In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested. *See Weisberg v. United States Department of Justice*, 745 F. 2d 1476, 1485 (D.C. Cir. 1984); *Weisberg v. United States Department of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Weisberg v. United States Department of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (agency affidavit must denote which files were searched and reflect a systematic approach to document location in order to enable the appellant to challenge the procedures utilized).

*Id.* at 68. An agency need not search every record system. *Id.* But its affidavit must show "with

reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant

documents [and] . . . identify the terms searched [and] . . . how the search was conducted." *Id.*

NIGC's affidavits fail to meet the *Oglesby* standards. There is no question of its good faith or that it performed a wide-ranging search into all NIGC offices. The difficulty is that "NIGC employees are asked to search all files *they* consider likely to contain relevant material when given a FOIA search request." Def.'s Reply, 2nd McCoy Decl. ¶ 6 (emphasis added). This description does not provide the requester or the Court with the reasonable detail that *Oglesby* requires, i.e., information as to what methods were used by the NIGC employees to identify and search for records likely to contain relevant material. NIGC offices in twelve separate locations were involved, which means that at least twelve separate people had to decide individually what records should be searched. Whether each of them searched the same kinds of records or whether some performed one kind of search and others performed a different kind of search is unknown at this point in time. NIGC's search might have been adequate and it might not; all that can be said is that its description of its search is definitely inadequate.

The government's motion for summary judgment will be denied without prejudice. A memorializing order accompanies this memorandum opinion.


Date: May 17, 2006                    _____/s/_____
                                      ROSEMARY M. COLLYER
                                      United States District Judge