**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) ) **Plaintiff,** ) ) **v.** ) ) NATIONAL INDIAN GAMING COMMISSION, ) ) ) ) **Defendant.** ) ) | **Civil Action No. 05-00806 (RMC)** |

**MEMORANDUM OPINION**

After the Court denied the initial motion for summary judgment filed by the National Indian Gaming Commission ("NIGC") in this FOIA[1] case, the Commission submitted additional declarations describing its search for responsive documents and moved again for summary judgment. Requester and Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") continues to object. NIGC has now thoroughly described its search and defended its reliance on various FOIA exemptions. Nothing more is required. The motion for summary judgment will be granted.

**I. BACKGROUND FACTS**

NIGC is a federal agency tasked with oversight regulation of Indian gaming operations under the Indian Gaming Regulatory Act of 1988 ("IGRA"), 26 U.S.C. §§ 2701 *et seq*. It has national headquarters in Washington, D.C. and is divided into six regions, with regional offices in Portland, Oregon; Sacramento, California; Phoenix, Arizona; St. Paul, Minnesota; Washington,

---

[1] Freedom of Information Act, 5 U.S.C. § 552.

D.C.; and Tulsa, Oklahoma.  The agency also has satellite offices in Temecula, California; Las Vegas, Nevada; Jackson, Mississippi; Rapid City, South Dakota; and Bellingham, Washington. Auditors and investigators from NIGC are responsible for ensuring that Indian gaming establishments are complying with IGRA, NIGC regulations, and tribal gaming ordinances.  NIGC works with the Federal Bureau of Investigations and other federal agencies to investigate allegations of regulatory violations and criminal activity in Indian gaming establishments.  Given this portfolio and the on-going investigation into former lobbyist Jack Abramoff's relationship to Indian tribes, CREW challenges the response to its FOIA request, which turned up few responsive documents.

CREW submitted the FOIA request to NIGC on March 21, 2005 asking for all documents and records that related to any contact between NIGC and Jack Abramoff, Michael Scanlon, James Dobson, Ralph Reed, Scott Reed, Itlia Federici, Grover Norquist, David Safavian, Congressmen Bob Ney and Tom DeLay, House Speaker Dennis Hastert, Senator Conrad Burns, and staff members of the Congressmen and Senator.  In addition, CREW asked for similar documents and records of contacts between NIGC and the employees of Greenberg Trauig LLP, Preston Gates Ellis LLP, Capital Campaign Strategies, Council of Republicans for Environmental Advocacy, National Center of Public Policy Research, and Americans for Tax Reform.  The request also asked for records concerning the Agua Caliente Tribe, Tigua Tribe, Saginaw Chippewa Tribe of Michigan, Mississippi Band of Choctaw Indians, Coushutta Tribe of Louisiana, and the Jena Band of Choctaw Indians.  Without objection from CREW, NIGC interpreted the request as seeking documents showing a relationship between the tribes and the non-tribal individuals and entities listed.

NIGC acknowledged CREW's FOIA request on March 22, 2005 and advised that its substantive response would be delayed due to limited personnel resources.  NIGC's FOIA office then

sent "search taskers" to the NIGC's Office of General Counsel, the NIGC Commissioners, the NIGC Office of Congressional and Public Affairs, the NIGC Enforcement Division, the NIGC Contracts Division, and NIGC's regional and satellite offices. Despite their somewhat misleading name, "search taskers" are not people; they are documents that contain written instructions to NIGC employees regarding the appropriate scope of the search they must conduct pursuant to a FOIA request. The search taskers used in this case attached CREW's FOIA request and "instructed recipients to search for responsive documents and reminded recipients to search electronic files in addition to paper files." Def.'s Reply In Supp. of Renewed Mot. for Summ. J. at 3.

When the search responses came back, the NIGC FOIA Office sorted through them and identified 14 responsive documents. It released in full a two-page letter and withheld its twelve-page attachment in its entirety under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), which protects inter- and intra-agency communications. The remaining documents, consisting of 262 pages, were withheld in their entirety under FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), which protects law enforcement records, on the basis that release reasonably could be expected to interfere with an ongoing investigation and enforcement proceeding. On May 19, 2005, after a phone conversation between CREW and NIGC's FOIA Officer, NIGC released an additional ninety-six pages: eighty-one in full and fifteen in part. After CREW filed this lawsuit, NIGC also conducted a supplemental search of certain files to eliminate any doubt its search had been adequate. That search uncovered two additional documents, bringing the total number of responsive pages to 280, of which 84 pages were released in full, 17 pages were partially released, and 179 pages were withheld in full.

NIGC filed its initial motion for summary judgment on September 12, 2005. CREW opposed, arguing that NIGC had not performed an adequate search. This Court denied the motion

without prejudice, concluding that NIGC "might have fully performed its duties to search and disclose requested non-exempt documents but fail[ed] to give the Court sufficient information to make that determination." *Citizens for Responsibility & Ethics In Wash. v. Nat'l Indian Gaming Comm'n*, 05-CV-00806 (RMC) Mem. Op. at 1. "The difficulty is that 'NIGC employees are asked to search all files *they* consider likely to contain relevant material when given a FOIA search request' [but] [t]his description does not provide . . . information as to what methods were used by the NIGC employees to identify and search for records likely to contain relevant material." *Id.* at 5.

NIGC filed a renewed motion for summary judgment on July 17, 2006. In support of its renewed motion, NIGC submits a third declaration of Regina Ann McCoy, NIGC's FOIA Officer in charge of NIGC's records management. Ms. McCoy's Third Declaration provides further details regarding the methods and scope of NIGC's search in response to Plaintiff's FOIA request. She explains the file systems maintained in each NIGC headquarters office as well as its regional and satellite offices, and that the Office of the Chairman and Commissioners, Office of Congressional and Public Affairs, Office of General Counsel, Division of Contracts, and Division of Enforcement searched those file systems because they were the divisions within NIGC that "had a reasonable possibility of having records responsive to [CREW's] search request." 3rd McCoy Decl. ¶ 20. "The Division of Audits was not asked to conduct a search because the audit-related files that it maintains were deemed not reasonably likely to contain" responsive documents as the persons and entities named in the request "do not appear to be audit firms or operators of Indian casinos" or certified public accountants. *Id.*

The Office of the Chairman and Commissioners searched by name for the individuals, entities, and tribes listed in the request. Files containing NIGC bulletins, biographical files of the

Commissioners, invitations to speak and speeches, and similar kinds of records were not searched. Rather, the search focused on those files that were reasonably likely to contain records relating to contacts between the Commissioners and designated people, tribes, and entities.  *Id.* ¶ 21.

The Office of Congressional and Public Affairs conducted electronic and manual searches of its file systems, excluding only those files that were deemed not likely to contain responsive records, such as file systems for congressional hearing testimony and pending litigation which contain only internally-generated documents that do not relate to external contacts.  *Id.* ¶ 22.

The Office of General Counsel ("OGC") searched its file systems electronically with the exception of tribal gaming ordinance files, litigation files, enforcement action files, Indian land opinions files, or requests for game classification opinions as to which class of gaming under the IGRA covers certain gaming machines.  Thus, the OGC searched subject matter files, outgoing correspondence files, pending legislation files, and contract review files.  *Id.* ¶ 23.

The Contracts Division conducted electronic searches in files containing outgoing correspondence and management contracts — but discovered that none of the named tribes ever submitted a management contract to the Contracts Division.  Initially, individual background files were not searched as no Privacy Act waivers were included in the request.  *Id.* ¶ 24.  But in order to assuage CREW's objections, the Contracts Division eventually searched those files and found no responsive records.  4th McCoy Decl. ¶ 14.

The Division of Enforcement conducted electronic searches with the exception of the Phoenix office for the Southwest region where none of the Indian tribes cited in the request is located.  Tribal files, investigatory files, enforcement files, and outgoing correspondence were all searched.  File systems containing memoranda of agreement with tribal governments for the

processing of fingerprint background checks were not searched as they were not deemed reasonably likely to contain responsive records. *Id.* ¶ 26. The Tribal Background Investigation Section within the Division of Enforcement was not asked to conduct a search because no Privacy Act waivers had been submitted. *Id.* ¶ 27.

The Division of Administration was not asked to searched its file systems containing procedural guidelines and directives, fee payments and quarterly reports, billing records, FOIA records, or the correspondence log which tracks all incoming mail, packages, and faxes. In response to the Court's decision, Ms. McCoy checked the incoming correspondence database to verify that the searches conducted elsewhere had identified all responsive documents which were not already disclosed. Ms. McCoy's secondary search confirmed the original result. *Id.* ¶ 29.

The NIGC's visitor logbooks that had been totally filled were misplaced on or about March 9, 2005, prior to CREW's FOIA request, and therefore were not initially searched. *Id.* ¶ 29. But at some point the logbooks "resurfaced," and Ms. McCoy searched the them for the periods August 24, 1998 - June 22, 2000; June 22, 2000 - March 8, 2005; and March 9, 2005 - present. *Id.* Only one entry was discovered, which revealed that the Jena Band of Choctaw Indians visited the NIGC on January 25, 2005. *Id.*

## II. LEGAL STANDARDS

### A.    FOIA

FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). "[D]isclosure, not secrecy, is the dominant purpose of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976); *DOI v. Klamath Water Users Protective Ass'n*,

532 U.S. 1, 8 (2001).  Because this case arises under FOIA, the Court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1331.  *See Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995).  And

because its request for information under FOIA was denied, at least in part, CREW has standing to

sue.  *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone whose request

for specific information [under FOIA] has been denied has standing to bring an action").

   Specifically, FOIA requires that in response to a properly submitted request an agency

must conduct "a search reasonably calculated to uncover all relevant documents."  *Weisberg v. U.S.*

*Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The adequacy of the search is judged by a

reasonableness standard.  *See McGehee v. CIA*, 697 F.2d 1095, 1100-01 (D.C. Cir. 1983).  "To

demonstrate the adequacy of its search, an agency must provide the court with affidavits of

responsible agency officials which are relatively detailed, nonconclusory, and submitted in good

faith."  *Gallace v. U.S. Dept. of Agriculture*, 273 F. Supp. 2d 53, 57 (D.D.C. 2003) (internal

quotations omitted).  But "a search need not be perfect, only adequate, and adequacy is measured by

the reasonableness of the effort in light of the specific request."  *Meeropol v. Meese*, 790 F.2d 942,

956 (D.C. Cir.1986).

**B.**  **Summary Judgment**

   Summary judgment is the routine method for resolving most FOIA actions when there

are no material facts genuinely at issue.  *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313-

14 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  The

standard is well known: under Rule 56 of the Federal Rules of Civil Procedure, summary judgment

must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and therefore affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. Thus, "[a] party opposing a motion for summary judgment must point to more than just 'a scintilla of evidence' supporting his position; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

"In a suit brought to compel production [of records], an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). A district court conducts a *de novo* review of an agency's determination to withhold information under FOIA. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a (g)(3)(A). It is the agency opposing disclosure of the information under FOIA that bears the burden of establishing that a claimed exemption applies. *See, e.g.*, *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (quoting *Military Audit Project*, 656 F.2d at 738).

## III.  ANALYSIS

CREW challenges the adequacy of NIGC's search for records, the application of FOIA exemptions by NIGC, and NIGC's reliance on the Privacy Act, 5 U.S.C. § 552a, to require personal waivers before releasing certain information.  It also renews its request for limited discovery.

### A.      Adequacy of the Search.

In its opposition to NIGC's original summary judgment motion, CREW's primary criticism regarding the adequacy of NIGC's search was that the agency declarations failed to identify which files were searched and whether the search included electronic files.  Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp.") at 10.  With the expanded explanation of the search contained in the Third McCoy Declaration, however, NIGC describes the file systems in each area of the agency that were searched and provides the rationale behind the determinations not to search selected files.  The Court therefore concludes that the search was adequate.  *See Meeropol*, 790 F.2d at 956 ("a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request.").

CREW's new criticisms of NIGC's search seek to require a degree of specificity and exhaustion that FOIA does not demand.  First, CREW argues that NIGC fails to disclose the method it used in searching for records pursuant to CREW's request.  Pl.'s Mem. of P. & A. in Opp. to Def.'s Renewed Mot. for Summ. J. ("Pl.'s Renewed Opp.") at 3.  Specifically, CREW complains

that "Ms. McCoy's declaration does not disclose what she told the 'search taskers' to provide to her." *Id.* This contention mis-reads the record. As noted above, "search taskers" are written messages that direct certain persons to perform certain tasks; they are not people. In fact, Ms. McCoy has already explained that the method employed was to forward the FOIA request to NGIC's offices along with a search tasker directing the offices to search for relevant materials. Suppl. McCoy Decl. ¶ 6. CREW further complains that the method was insufficiently disclosed because "we have no idea what formed the basis for" NGIC employees' determination what they considered to be relevant materials. Pl.'s Renewed Opp. at 4. To the contrary, CREW's own FOIA request, in CREW's own words, identified the records that it wanted. Ms. McCoy has now provided sufficient detail regarding the specific files that NIGC employees reviewed. Nothing more is needed. *See Gallace*, 273 F. Supp. 2d at 55; *Hunt v. U.S. Marine Corps*, 935 F. Supp. 46, 50 (D.D.C. 1996).

CREW also singles out Ms. McCoy's description of the search for electronic documents. According to CREW, it is not enough for NIGC merely to state that it performed an electronic search for the names of the individuals and entities identified in the FOIA request; it must reveal details about the search, including "information regarding the actual databases or indices searched" and "what Boolean operators (if any) were used to accomplish the electronic search." Pl.'s Renewed Opp. at 5. Contrary to CREW's contentions, FOIA does not demand this degree of detail. "An agency's affidavits need not be precise but they must provide basic information on what records were searched, by whom, and in what manner." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 33 (D.D.C. 2002). The Court finds that Ms. McCoy's descriptions of NIGC's search for electronic documents are sufficient to satisfy this standard. There is no remaining dispute about the adequacy of NIGC's search.

**B.      Records Withheld by NIGC.**

Having determined that the search was adequate, the Court must now determine whether NIGC properly withheld certain records.  To justify its decision to withhold those records, NIGC relies on certain of FOIA's enumerated exemptions under 5 U.S.C. § 552(b), as well as the Privacy Act, 5 U.S.C. § 552a.

*1.      FOIA Exemptions.*

In order to sustain NIGC's reliance on FOIA's enumerated exemptions, the Court must find that NIGC's "affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Miller*, 730 F.2d at 776 (quoting *Military Audit Project*, 656 F.2d at 738).  CREW renews its opposition to NIGC's analysis and application of FOIA Exemptions 7(A), 7(C) and 6, and 7(D).[2]

NGIC relies extensively on FOIA Exemption 7, which protects from disclosure "records or information complied for law enforcement purposes" under certain circumstances that are specifically enumerated in subsections (A) through (F).  5 U.S.C. § 552(b)(7).  Thus, in addressing any claim under one of Exemption 7's subsections, the Court must first determine whether the withheld information was "compiled for law enforcement purposes." *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996).

---

[2] CREW also contests NIGC's reliance on Exemption 5, the deliberative process privilege. Since the documents are also being properly withheld under Exemption 7(A), see *Vaughn* Index items 1, 8, 9 & 13, and Suppl. *Vaughn* Index items 15-16, the Court need not address Exemption 5. *See Rosen v. Vaughn*, 484 F.2d 820 (D.C. Cir. 1973).

Although "FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions," *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002) (citation omitted), an agency that has a mixture of law enforcement and administrative functions must clearly establish that records pertain to its law-enforcement duties, *Pratt v. Webster*, 673 F.2d at 420-21 (requiring a mixed-duties agency to establish a "nexus between [its] investigation . . . and one of [its] law enforcement duties"). "A record is deemed to have been compiled for such a purpose if it was created or acquired in the course of an investigation 'related to the enforcement of federal laws,' and 'the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least a colorable claim of its rationality.'" *Quinon*, 86 F.3d at 1228 (quoting *Pratt*, 673 F.2d at 420-21); *see also Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003); *Tax Analysts*, 294 F.3d at 78. The first part of this analysis is satisfied if the agency is "able to identify a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible . . . violation of federal law." *Pratt*, 673 F.2d at 420. The second part of the analysis is "deferential"; a court "should be hesitant to second-guess" the agency's decision to investigate, and should reject the agency's rationale only if it is "pretextual or wholly unbelievable." *Id.* at 421.

Ms. McCoy informed the Court that "[t]he withheld records were compiled as part of an ongoing multi-agency law enforcement investigation regarding the alleged misuse of tribal revenues by certain tribes." 1st McCoy Decl. ¶ 33. Similarly, Alan Fedman, NIGC's Director of Enforcement, reported that "[t]here are open and pending internal investigations by NIGC into the alleged misuses of tribal revenues by certain tribes as well as related federal law enforcement

investigations." Fedman Decl. ¶ 5. "The documents that are being withheld consist of material that NIGC personnel have received from several sources regarding alleged misuse of tribal gaming revenues and two inter/intra agency memoranda regarding these investigations." *Id.* It is obvious that these investigations relate to the very allegations of corruption that prompted CREW to submit its FOIA request. Because there is no basis to second-guess NIGC's decision to investigate these apparent violations of federal law, the Court finds that Ms. McCoy's and Mr. Fedman's declarations are sufficient to demonstrate that the documents were compiled for law enforcement purposes and will, therefore, consider whether NIGC can satisfy the specific requirements of Exemption 7's subsections.

a.  Exemption 7(A).

Exemption 7(A) authorizes an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that production . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552a(b)(7)(A). The agency must show that release of the records reasonably could be expected to cause some articulable harm. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).

NIGC relies on Exemption 7(A) to justify its withholding of several records that allegedly contain details regarding the "course and scope of investigation(s)." Suppl. McCoy Decl. Ex. C. The Fedman Declaration adequately describes the harm that could ensue if the records were disclosed: release of the records would identify which federal agencies are involved and could be used "to ascertain the direction of these investigations and to identify the potential charges to be brought," which "could seriously interfere with and seriously undermine the federal investigations," Fedman Decl. ¶ 9. Public knowledge of NIGC's "investigative methods and pre-enforcement

deliberations . . . would also expose the state and nature of the current investigation into the alleged misuse of tribal gaming revenues." *Id.* ¶ 10; *see also Robbins Tire*, 437 U.S. at 236 ("[D]isclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings'").

Because CREW's interests lie exactly with the state and nature of these investigations, it strives mightily to overcome NIGC's reliance on Exemption 7(A). It asserts that the record "is far from clear as to precisely which investigation or investigations the withheld documents relate" and that NIGC has failed "to identify the specific federal law or laws that are the predicate for either referenced investigation." Pl.'s Opp. at 14-15. It even argues that "NIGC failed to demonstrate that there is a rational basis for a law enforcement investigation" despite the factual averments in CREW's own complaint and briefs.[3] *Id.* at 15 n.14. But these are not the criteria by which an agency's response is measured. NIGC need not submit declarations that reveal the exact nature and purpose of its investigations in order to satisfy FOIA — Exemption 7(A) exists precisely to shield that sort of revelation. *See Swan v. SEC*, 95 F.3d 498, 500 (D.C. Cir. 1996); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998). Because NIGC's affidavits sufficiently establish how disclosure of the records would interfere with an ongoing law enforcement proceeding, NIGC properly relied on Exemption 7(A). *See, e.g.*, *Butler v. Dep't of Air Force*, 888 F. Supp. 174, 183 (D.D.C. 1995), *aff'd*, 116 F.3d 941 (D.C. Cir. 1997).

---

[3] *See, e.g.*, Pl.'s Opp. at 1 ("Against the backdrop of an unfolding national disgrace by a high-powered lobbyist and a public relations executive to bilk millions of dollars from Indian tribes that operate gambling casinos . . . ."); at 3 ("CREW's FOIA request arose out of an unfolding scandal concerning the millions of dollars that Indian tribes operating gambling casinos had paid lobbyist Jack Abramoff and Michael Scanlon, a public relations executive and former staff for Congressman Tom Delay."); *id.* at 4 ("[i]n the wake of the burgeoning scandal over these lobbying practices . . .").

b.      Exemptions 7(C) and 6.

Pursuant to Exemptions 7(C) and Exemption 6, NIGC withheld the names of certain agency employees and individuals who are involved in NIGC investigations. *See* 1st McCoy Decl. ¶¶ 29-30, 35. Exemption 7(C) protects from disclosure law enforcement information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(7)(C). Similarly, Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6). The Supreme Court has interpreted the scope of Exemption 6 broadly, holding that any information that "applies to a particular individual" may qualify for protection if its disclosure would rise to the level a "clearly unwarranted" invasion of privacy. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *see also N.Y. Times Co. v. NASA*, 920 F.2d 1102, 1005 (D.C. Cir. 1990) (en banc).

Whether disclosure would amount to a clearly unwarranted invasion of privacy is judged by a balancing test that weighs the public's right or interest in the information against the individual's privacy interests. *See Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). The only legitimate public interest in this balancing analysis is "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.* (quoting *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 497 (1994)). The individual's privacy interest need only be legitimate. If there is no public interest at all in the information, then the government may withhold it because "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

The names of law enforcement personnel are generally exempt from disclosure under Exemption 7(C) because disclosure "could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs." *Massey v. FBI*, 3 F.3d 620, 624 (2d Cir. 1993). Similarly, *Voinche v. FBI*, 940 F. Supp. 323 (D.D.C. 1996), found "no reason to believe that the public [would] obtain a better understanding of the workings of various agencies" by learning the identities of individuals and therefore upheld "the defendant's assertion of Exemption 6 in order to protect the privacy interests of the individuals at issue." *Id.* at 330.

In point of fact, NIGC redacted only the names and contact information of law enforcement or agency employees or third parties who provided information to NIGC.  1st McCoy Decl. ¶¶ 29-31 (Exemption 6) & 36-38 (Exemption 7(C)).  CREW disclaims any interest in this information.  Pl.'s Opp. at 21 ("Nor is CREW interested in learning the "[n]ames and contact information of agency employees and sources.").  Given this admission, the Court discounts CREW's argument that it is not "evident how revealing the names of the individuals who supplied public source newspaper articles would invade their privacy in any way." *Id.*  The fact that an individual supplied information to assist NIGC in its investigations is exempt from disclosure under FOIA, regardless of the nature of the information supplied.  CREW's arguments suggest something to the contrary is, or should be, the law, but the arguments are incorrect.

c.      Exemption 7(D).

Exemption 7(D) protects from disclosure law enforcement records the release of which "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source."  5 U.S.C. §

555(b)(7)(D).  "[A] source is confidential within the meaning of Exemption 7(D) if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'"  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (quoting S. Rep. No. 93-1200, at 13 (U.S.C.C.A.N pp. 6267, 6291)).  "[T]he word 'confidential,' as used in Exemption 7(D), refers to a degree of confidentiality less than total secrecy. A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the [agency] thought necessary for law enforcement purposes."  *Landano*, 508 U.S. at 174.

NIGC is withholding only one document on the basis of Exemption 7(D).  *See* Suppl. McCoy Decl. Ex. C.  Ms. McCoy declares that Document 1 on the *Vaughn* Index, an intra-agency communication, identifies a confidential source "used by the NIGC in this investigation" and further that, "[a]s a confidential source, the person has been given an express guarantee that personal and contact information will not be disclosed to the public."  1st McCoy Decl. ¶ 40.  She further states that "exposure of the source might derail the current investigation as the public would be informed of NIGC and federal law enforcement investigative methods and pre-enforcement deliberations as well as the state and nature of the current investigation into the alleged misuse of tribal gaming revenues."  *Id.* ¶ 33; *see also* Fedman Decl. ¶ 7 ("[i]f current informants are exposed, future potential informants might be deterred" and current informants might be "subject to harassment, retaliation, potential loss of employment, and loss of access to documents" that assist the ongoing investigation).

Although Ms. McCoy's statements conform to the requirements of the exemption, CREW argues that NIGC must supply "the context for this claimed guarantee of confidentiality, including what is even meant by the term 'this investigation,' and the timing of any promise of

confidentiality." Pl.'s Opp. at 23. "Context" may be necessary when an agency is relying upon an inferred promise of confidentiality, but it is not required when the agency, as here, states unequivocally that "the person has been given an express guarantee . . . ." 1st McCoy Decl. ¶ 40; *see Landano*, 508 U.S. at 174. There is no ambiguity in the statement and no reason to doubt Ms. McCoy's good faith.

　　　　　2.　　*Privacy Act Waivers.*

　　　　　NIGC's second asserted justification for withholding information is the Privacy Act. Specifically, NIGC did not disclose whether any responsive records exist in the individual background investigation files (from the Enforcement Division) or the individual background files of those with management contracts (from the Contracts Division), because CREW failed to provide individual Privacy Act waivers from any individuals. CREW argues that the Privacy Act does not constitute an exemption under FOIA and any responsive records, if they exist, must be released.

　　　　　The Privacy Act prohibits the disclosure of personally identifiable records if those records are retrieved from a system of records in which the record is retrieved based on an individual's name or other personal identifier. 5 U.S.C. § 552a. While the Privacy Act does not prevent disclosure when it is "required" by FOIA, 5 U.S.C. § 552a(b)(2), it prohibits disclosure of the specified kinds of records when they fall under a FOIA exemption. *See Dep't of Defense v. FLRA*, 510 U.S. 487, 502 (1994); *U.S. Dep't of the Navy v. FLRA*, 975 F.2d 348, 354-56 (7th Cir. 1992).

　　　　　NIGC determined that the Enforcement Division's individual background investigation files — which are background investigations on applicants to key employee or primary management official positions at Indian gaming establishments — are not reasonably likely to

-18-

contain responsive documents.  *See* 4th McCoy Decl. ¶¶ 9, 12.  "The public figures named by Plaintiff are Congressmen, Washington lobbyists, and political strategists (*see* Compl. ¶¶ 15-25), and are not likely to be working as blackjack dealers, bingo callers, or other employees of Indian casinos."  Def.'s Reply In Supp. of Renewed Mot. for Summ. J. at 8.  This logic cannot be refuted. NIGC's decision not to search these records was reasonable.  *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485-89 (D.C. Cir. 1984).

Even if the Enforcement Division's individual investigatory files contained responsive records, NIGC asserts that those files are law enforcement documents which, in the absence of a waiver, are exempt under FOIA Exemption 7(C) because their disclosure "could reasonably be expected to constitute an unwarranted invasion of privacy."  5 U.S.C. § 552(b)(7)(C); *see Melius v. Nat'l Indian Gaming Comm'n*, 96-CV-2210 (TFH), 1999 U.S. Dist. LEXIS 17537, at *14-15 (holding that NIGC's individual background files are law enforcement records subject to Exemption 7(C) and that in the absence of a waiver, disclosure is not required by FOIA because "[i]ndividuals mentioned in law enforcement investigatory reports . . . have a presumptive privacy interest in keeping their names undisclosed").  The Court agrees that NIGC's investigations into the backgrounds of Indian casino employees are, at least in part, related to the enforcement of federal laws and the contents of those investigatory files would, therefore, be exempt from FOIA disclosure under Exemption 7(C).  It follows that a Privacy Act waiver would be necessary before NIGC could even confirm if it has individual investigatory files that mention the names of any of the real persons listed by CREW in its FOIA request, much less release such documents.  *See U.S. Dep't of Justice v. Reporters Comm. for the Freedom of the Press*, 489 U.S. 749 (1989) (upholding FBI's refusal to confirm or deny existence of law enforcement records under Exemption 7(C)).  There is simply no

basis upon which to challenge NIGC's decision to withhold documents contained in its Enforcement Division's individual investigatory files.

The other files that were the subject of NIGC's Privacy Act claim were the Contract Division's individual background files.  In order to eliminate any question regarding the application of the Privacy Act to those records, NIGC conducted an electronic search of the Contracts Division's individual background files for records of the named individuals, and found no responsive documents.  4th McCoy Decl. ¶¶ 13-14.  Accordingly, there is no basis on which to question NIGC's failure to provide records from that set of files.

### C.    Discovery

CREW urges the Court to permit some limited discovery from NIGC — *viz.*, the depositions of Ms. McCoy and one other knowledgeable witness pursuant to Fed. R. Civ. P. 30(b)(6).  Pl.'s Renewed Opp. at 8.  Since "[i]t would not be productive to identify every single deficiency in the agency's most recent submission," CREW adds nothing to justify this request beyond the alleged deficiencies discussed above.  *Id.*

Judges on this Court have repeatedly held that "discovery in a FOIA action is generally inappropriate." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000); *see also, e.g., Allen v. U.S. Secret Service*, 335 F. Supp. 2d 95, 100 (D.D.C. 2004); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003); *Pub. Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 28 (D.D.C. 2000).  Although an agency's FOIA declarations are to be "accorded a presumption of good faith," *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted), when there is evidence of some wrongdoing such as "illegal destruction of documents," *Judicial Watch v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28 (D.D.C. 1998), or a material conflict

in agency affidavits, *Long v. U.S. Dep't of Justice*, 10 F. Supp. 2d 205 (N.D.N.Y. 1998), limited discovery has been allowed.

This Court has already found that "there is no question of [NIGC's] good faith," Mem. Op. at 5, and CREW has presented nothing to bring that finding into doubt.  The alleged deficiencies in the agency affidavits not being legally significant , and there being no other reason to question the good-faith efforts of NIGC to comply fully with FOIA, the Court finds no extraordinary basis to allow discovery in this case.

## IV.  CONCLUSION

For the reasons stated, NIGC's motion for summary judgment will be granted and the case will be dismissed.  The affidavits submitted by NIGC provide sufficient detail to establish that the search was adequate and that the withheld documents fit within the claimed Exemptions.  The Court finds this motion to be suitable for decision on the briefs and therefore, in its discretion, denies Plaintiff's request for oral argument.  *See* LCvR 7(f).  A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: December 12, 2006